UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LUDIE C. JACKSON,<br><br>                Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                Defendant. | Case No. 3:14-cv-05076-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On July 15, 2010, plaintiff filed an application for SSI benefits, and on October 26, 2010, she filed another one for disability insurance benefits, alleging in both applications she became disabled beginning June 28, 2008. *See* Dkt. 10, Administrative Record ("AR") 22. Both

ORDER - 1

applications were denied upon initial administrative review on March 3, 2011, and on reconsideration on April 12, 2011. *See id.* A hearing was held before an administrative law judge ("ALJ") on March 30, 2012, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *See* AR 40-91.

In a decision dated August 14, 2012, the ALJ determined plaintiff to be not disabled. *See* AR 22-34. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 22, 2013, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1; 20 C.F.R. § 404.981, § 416.1481. The administrative record was filed with the Court on May 16, 2014. *See* Dkt. 10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred in failing to properly: (1) identify all of plaintiff's severe impairments; (2) evaluate the medical evidence in the record; (3) assess plaintiff's credibility; (4) evaluate the lay witness evidence in the record; (5) assess plaintiff's residual functional capacity; and (6) determine whether plaintiff is capable of performing other jobs existing in significant numbers in the national economy. Plaintiff also argues additional evidence submitted to the Appeals Council supports remand for further administrative proceedings. For the reasons set forth below, the Court agrees the ALJ erred in failing to properly identify all of plaintiff's severe impairments and in evaluating the opinions of Julie Oyemaja, Psy.D., Charaine E. Herald, Ph.D., and Kelly Whetsone, ARNP – and thus in assessing plaintiff's residual functional capacity and in finding her to be capable of performing other jobs – and therefore in determining her to be not disabled. Also for the reasons set forth below, however, the Court finds that while defendant's decision to

ORDER - 2

deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

ORDER - 3

I.  The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); *see also* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. *See Smolen*, 80 F.3d at 1290.

---

. . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 4

The ALJ in this case found plaintiff had severe impairments consisting of migraine headaches and depression. *See* AR 24. Plaintiff argues the ALJ erred by not finding her borderline intellectual functioning and learning disorders to be severe impairments as well. The undersigned agrees. As discussed further below, the ALJ failed to properly evaluate the opinion of Dr. Oyemaja, who assessed plaintiff with significant mental functional limitations based at least in part on the above two diagnoses. *See* AR 260. As such, it appears those impairments have had more than a *de minimis* impact on plaintiff's ability to perform work-related activities. Nor can the ALJ's error be said to be harmless,[2] given that although as also discussed further below the ALJ did not end her analysis at step two, she nevertheless failed to properly assess plaintiff's residual functional capacity later in the sequential disability evaluation process again in part based on her failure to properly evaluate Dr. Oyemaja's opinion.[3]

II.     The ALJ's Evaluation of the Medical Opinion Evidnce

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

---

[2] *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

[3] *see Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (error by ALJ in failing to consider plaintiff's obesity at step two harmless because ALJ did not err in evaluating plaintiff's impairments at later steps).

ORDER - 5

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a

nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

    A.    <u>Dr. Oyemaja</u>

As noted above, plaintiff was diagnosed with borderline intellectual functioning and learning disorders, as well as a recurrent, moderate major depressive disorder by Dr. Oyemaja. *See* AR 255, 260. Dr. Oyemaja also opined in relevant part that plaintiff:

> . . . may be able to be successful in an on-the-job training experiences [sic]. Her social judgment is impaired. She will likely require active supervision for good vocational performance. A sheltered-work shop experience would be ideal. . . .

AR 256, 261. The ALJ stated she gave "no weight" to Dr. Oyemaja's opinion that plaintiff would "need a sheltered setting, because it is inconsistent with [plaintiff's] activities, which include walking everywhere, cooking and cleaning in her home as well as for her disabled friend." AR 31. Plaintiff asserts this is not a legitimate reason to reject Dr. Oyemaja's opinion. Dkt. 15, p. 6. Although plaintiff does not specifically discuss why it is not – and although a medical opinion may be rejected if inconsistent with other evidence that contradicts that opinion, including reported daily activities (*see Morgan*, 169 F.3d at 601-02; *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989)) – the undersigned nevertheless agrees the ALJ erred here, as none of the above activities are necessarily inconsistent with the impairments Dr. Oyemaja diagnosed, including that regarding social judgment.

    B.    <u>Dr. Herald</u>

Based on a psychological evaluation he performed, Dr. Herald found plaintiff to be markedly limited in a number of mental functional areas. *See* AR 438. The ALJ stated she gave "little weight" to those limitations, because they seemed to be "based heavily on [plaintiff's]

ORDER - 7

subjective reports of her symptoms," which the ALJ further found to be "not always credible." AR 31. "A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan*, 169 F.3d at 602 (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989)).

Plaintiff argues the ALJ failed to acknowledge Dr. Herald based the assessed limitations on her own clinical findings. The undersigned agrees that some of those marked limitations – namely, in the areas of understanding, remembering and persisting in tasks by following complex instructions and in learning new tasks – do appear to be based at least in part on such objective findings. *See* AR 438. Given that the ALJ limited plaintiff to performing unskilled work with simple tasks (*see* AR 27), however, the undersigned finds that error to be harmless. That still leaves the marked limitation in learning new tasks, though, in regard to which the ALJ made no specific allowance in her assessment of plaintiff's residual functional capacity. *See id.* Accordingly, that error was not harmless.

      C.      Nurse Whetstone

In a letter dated March 19, 2012, Nurse Whetstone wrote that plaintiff was currently under her care for "her multiple medical problems," and that she had "severe" depression. AR 476. Nurse Whetstone also wrote that she did not believe plaintiff was "able to work due to her mental health problems." *Id.* The ALJ stated she gave "little weight to this opinion because it is inconsistent with [plaintiff's] activities, which include walking everywhere, attending church, reading the Bible, assisting a friend with arthritis that could not get around, and cooking for a disabled friend." AR 31. The undersigned agrees with plaintiff that here too the ALJ erred for the same reasons she erred in regard to Dr. Oyemaja's assessed limitations. That is, the ALJ has not

ORDER - 8

shown that the activities she states plaintiff engages in have been performed in a manner or to an extent necessarily inconsistent with significant mental health problems.

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.* It thus is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

Here, the ALJ found plaintiff had the mental residual functional capacity to perform:

> **. . . unskilled work with simple tasks, only occasional changes in the work setting, and only occasional judgment or decision making with no interaction with [the] general public and occasional superficial interaction with co-workers.**

AR 27 (emphasis in original). In light of the above errors, however, the ALJ's RFC assessment cannot be said to completely and accurately describe all of plaintiff's functional limitations, and therefore to be free of error.

ORDER - 9

IV.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Tackett*, 180 F.3d at 1100-1101; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same mental functional limitations as were included in the ALJ's assessment of plaintiff's RFC. *See* AR 87. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. *See* AR 86-87. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. *See* AR 33-34. Again, though, because of the above errors in the ALJ's evaluation of the medical opinion evidence in the record and her assessment

ORDER - 10

of plaintiff's residual functional capacity, it cannot be said that the ALJ's hypothetical question is completely accurate, and therefore that her step five determination is free of error.

V.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical opinion evidence in the record concerning plaintiff's mental functional capabilities, residual functional capacity and ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded

ORDER - 11

plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 13th day of February, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 12